0681

The STATE, Respondent v. Thurman C. OSBORNE and Billy Ray Poston, Defendants, of whom Billy Ray Poston is, Appellant.

Appeal of Billy Ray POSTON. And The STATE, Respondent v. Thurman C. OSBORNE and Billy Ray Poston, Defendants, of whom Thurman C. Osborne is, Appellant.

Appeal of Thurman C. OSBORNE.

(345 S. E. (2d) 256)

Court of Appeals

*Asst. Appellate Defender T. Stacey, Deputy Chief Atty. Elizabeth C. Fullwood,* both of *S. C. Office of Appellate Defense,* Columbia, and *John E. Cuttino,* of *Bridges & Orr.* Florence, *for appellants.*

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr.* and *Staff Attys. Susan A. Lake* and *Norman Mark Rapoport,* Columbia; and *Sol. Dudley Saleeby, Jr.,* Florence, *for respondent.*

Heard Oct. 22, 1985.

Decided April 14, 1986.

GARDNER, Judge:

Osborne and Poston were convicted for the murders of two teenage boys and sentenced to life. Their trials and appeals were consolidated. We reverse and remand.

The bodies of two teenagers, who were stepbrothers, were discovered in a wooded area near Jeffries Creek, east of Florence. Both had been shot in the head with a .38 caliber bullet and the younger of the two had also been shot with a .22 caliber bullet. The murders were unsolved for three years when one William Evans, an inmate in the state penitentiary, agreed to testify against Poston and Osborne (the defendants).

The testimony reflects that the older of the victims brought his car, a Mustang, to Florence so that his father might have the gears of the car repaired; the car would not go into reverse. This car was found at the murder scene.

This appeal hinges upon the materiality of two recording tapes or transcriptions thereof which were not produced by the state upon timely *Brady*[1] motions prior to trial. The two tapes were of conversations or statements of Evans, upon whose testimony the state's case was made and rested.

The test of materiality of evidence nondisclosed after *Brady* motions is set forth in *United States v. Agurs*, 427 U. S. 97, 96 S. Ct. 2392, 49 L. Ed. (2d) 342 (1976) as follows:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated *in the context of the entire record.* If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the

---

[1] In *Brady v. State of Maryland*, 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed. (2d) 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *See also United States v. Bagley*, _____ U. S. _____, 105 S. Ct. 3375, 87 L. Ed. (2d) 481 (1985) which held that prosecutorial information under *Brady* includes impeachment evidence.

other hand, if the verdict is already of questionable validity, *additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.* [Emphasis ours.]

This rule imposes on us the responsibility of reviewing, as thirteenth jurors, the entire record of this case with meticulous care, and we have.

We hold that the verdict is already of questionable validity. We conclude this because the testimony at the trial reflects that for three years Evans had maintained that he was not an eyewitness to the murders and that he continued to maintain this even after he had been transferred from the penitentiary to the Florence County Jail on July 18. Evans testified that then[2] he changed the story to the eyewitness account. The record further reflects that about that time he was himself charged with the murder and that the solicitor, arguably in exchange for his eyewitness testimony, transferred Evans' case to the juvenile court, which in effect, with the sentences that Evans was then serving, amounted to a near grant of immunity.

Evans, a heavy user of alcohol and drugs, has a long criminal record. He served a prison term in North Carolina for two counts of grand larceny. Then in May 1982, Evans pled guilty to three counts of house breaking and grand larceny and was serving sentences for these crimes in July 1983, and at the time of the trial of this case in January 1984. The state's case, then, rested upon the testimony of a confirmed criminal who for three years had maintained total innocence and, arguably as noted, changed his story to the eyewitness account in exchange for near immunity from prosecution; this would bring into play *Giglio v. United States*, 405 U. S. 150, 92 S. Ct. 763, 31 L. Ed. (2d) 104 (1972) by which it was held that where immunity is granted a witness on whom the prosecution's case depends, the entire agreement must be disclosed by the prosecution to the jury.

The jury deliberated almost ten hours and during the deliberations asked to rehear Evans' testimony.

The trial judge verbalized his doubt of the defendants' guilt thusly:

---

[2] This is contradicted by one of the undisclosed tapes.

I was thinking, while we were waiting for the jury's decision, how they had a very hard decision to make, and how I was glad that it was them who had to make that decision rather than me. By their making that decision, they, in essence, told me what to do. I have no choice, and it makes it easier for me to do it than it would for me to have sat over in that jury box and make the decision.

Exacerbating the situation as it existed before the case went to the jury, the solicitor made the following inappropriate and highly prejudicial closing argument:

The judge is going to tell you what you need to know about the law. He's going to tell you that there is a presumption of innocence, but I'll tell you it wasn't created for this trial. Everybody who has ever come to trial has said, "I'm not guilty." That doesn't mean that I'm not guilty, it's just saying that "I want a trial."

And they say, "beyond a reasonable doubt." Folks that's not a magic word. All that means is, you've got to use your reasoning ability, your common sense to come up with what you can see to be logical, and rational, and consistent.

After a very careful reading of every word of the record and for the aforestated reasons, this court concludes that the state's case was so weak that the excluded tapes hereinafter referred to were material in affording the defendants due process.

Having decided that the verdict is already of doubtful validity, we address the failure of the state to disclose before trial (1) a tape, or transcription thereof, of a conversation between Evans and fellow inmates at Manning Correctional Institution, which was secretly recorded in early July 1983 by Danny Bruce, one of the other inmates, (2) a tape, or transcription thereof, of a statement of Evans while in the Florence County Jail on July 12, 1983. We note that a transcript of a statement given to the police on July 19, 1983, was disclosed to defense counsel prior to trial.

It was only after the state's case closed and the trial judge firmly overruled defendants' motion to recall Evans for

cross-examination, that the state delivered to defendant transcriptions of the jailhouse tape and of the tape taken in Florence, South Carolina on July 12, 1983.

We footnote[3] the conflicts between the undisclosed tapes and the July 19 tape. In the footnote we designate the jailhouse tape as tape number one, the July 12 tape as tape number two, and the July 19 (trial testimony tape) as tape number three.

In contrasting the disclosed tape with the undisclosed tapes, we conclude that, had the *Brady* motion been timely complied with, defense counsels' cross-examination might well have shifted the weight of evidence to establish reasonable doubt. For this reason, we conclude, perforce of *Agurs, supra,* that constitutional error has been committed — that due process under both the Federal and State Constitutions was not afforded defendants.

For the stated reasons, we reverse and remand for a trial *de novo.*

Reversed and remanded.

CURETON, J., concurs.

BELL, J., concurs in result only.

---

[3] The trial testimony is that Evans changed his story after July 18, 1983; tape number two indicates this change to have been on July 12, 1983. None of the transcribed testimony reflects that tape number one was read Evans as a prelude to his later statements. Evans' trial testimony is that he was offered no immunity; the record arguably refutes this, bringing into play the law of *Giglio, supra.* Tape number two reflects coaching to get the eyewitness account. In tape number two Evans said he did not remember Osborne's name; at trial he remembered his name and called him Clyde. In all three statements he did not remember the make of the victim's car by which all five were transported to the murder scene; at trial, he remembered that the victim's car was a Mustang. In tape number one Evans says that Keith (one of the victims) had a stash of marijuana; in tape number two Evans relates that Keith wanted to buy an ounce of marijuana. At trial Evans testified that victim Keith drove the Mustang to the murder scene; in tape number two he relates that victim Kent was forced to drive the Mustang to the murder scene. There are other contradictions unnecessary to list; however, had tapes number one and two been timely produced the contradictions could have been explored in cross-examination.